IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KEVIN F. MCCRAY, : | |
| : | |
| Petitioner, : | |
| : | |
| v. : | Civ. Act. No. 13-123-LPS |
| : | |
| DAVID PIERCE, Warden, and : | |
| ATTORNEY GENERAL OF THE : | |
| STATE OF DELAWARE, : | |
| : | |
| Respondents.[1] : | |

Kevin McCray. *Pro se* Petitioner.

Karen V. Sullivan, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

**MEMORANDUM OPINION**

March 21, 2016
Wilmington, Delaware

---

[1] Warden David Pierce replaced Warden Perry Phelps, an original party to this case. *See* Fed. R. Civ. P. 25(d).

STARK, U.S. District Judge:

## I. INTRODUCTION

Pending before the Court is an Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 ("Petition") filed by Petitioner Kevin F. McCray ("Petitioner"). (D.I. 3) For the reasons discussed, the Court will dismiss the Petition as time-barred by the limitations period prescribed in 28 U.S.C. § 2244.

## II. BACKGROUND

Petitioner was arrested on August 28, 2002 and subsequently indicted on four counts of first degree robbery, four counts of possession of a firearm during the commission of a felony ("PFDCF"), two counts of second degree burglary, attempted robbery, attempted burglary, kidnaping, and a variety of related offenses. (D.I. 19 at 1) In July 2003, Petitioner pled guilty to three counts of first degree robbery and one count of PFDCF. (D.I. 19 at 2) The presentence investigation revealed that Petitioner had prior convictions necessitating mandatory sentence enhancements for both the robbery and weapon charges. Consequently, during the sentencing hearing on December 5, 2003, and pursuant to a revised Plea Agreement, the Superior Court allowed Petitioner to withdraw his guilty plea to one count of first degree robbery. The Superior Court conducted a further colloquy to make certain that Petitioner understood the increased penalties he faced on the remaining two counts of first degree robbery and one count of PFDCF, and determined that Petitioner's guilty plea to those charges remained knowing, voluntary, and intelligent. The Delaware Superior Court then sentenced Petitioner to an aggregate of thirty-eight years at Level V incarceration, suspended after twenty-six years and decreasing levels of supervision. Petitioner did not appeal his 2003 conviction and sentence. (D.I. 19 at 2)

1

While Petitioner was being prosecuted in Delaware, he was also facing federal charges stemming from robberies at three check cashing stores in New Jersey. As those case came to trial in New Jersey in December 2004, Petitioner's trial counsel reported to the District Court of New Jersey that Petitioner's mental condition had "deteriorated." It was reported that Petitioner had been in a mental institution at some point. In January 2005, the federal trial was halted, and Petitioner was evaluated by a psychiatrist. In July 2006, the mental health professionals concluded that Petitioner had an antisocial character and that there were signs of malingering as to cognitive intellectual limitations. They recommended anti-psychotics to restore Petitioner to competence, which Petitioner refused to take. In January 2007, the District Court for the District of New Jersey issued a decision refusing to order involuntary forced medication.

Meanwhile, back in Delaware, on August 5, 2005, Petitioner filed his first motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 Motion"). The Delaware Superior Court denied the Rule 61 Motion on August 18, 2005, and Petitioner did not appeal that decision. (D.I. 19 at 3) Petitioner filed a second Rule 61 Motion on October 27, 2005, which the Superior Court summarily dismissed on December 19, 2005 as repetitive under Rule 61(i)(2). Petitioner did not appeal that decision. (D.I. 19 at 3)

Petitioner, with the help of another inmate, filed a Motion to Withdraw Guilty Plea on December 28, 2005, asserting his guilty plea was invalid due to mental illness. After noting that the United States District Court for the District of New Jersey had declared Petitioner incompetent to stand trial for charges pending before it, the Superior Court dismissed the Motion without prejudice on February 15, 2006. (D.I. 19 at 3) The Superior Court indicated that Petitioner could refile the Rule 61 Motion "after he is restored to competence." *Id.*

On April 3, 2007, Petitioner filed a § 2254 petition in this Court. *See McCray v. Oxley*, Civ. A. No. 07-191-JJF. The State filed an Answer, asking the Court to dismiss the Petition as untimely or to dismiss the Petition without prejudice for failure to exhaust state court remedies. On May 14, 2008, the Honorable Joseph J. Farnan, Jr. issued an Opinion concluding that the petition was not time-barred because the limitations period was tolled from December 2, 2003 (33 days before AEDPA's limitation period would have expired) until "such time that Petitioner is restored to competency." *McCray v. Oxley*, 553 F. Supp. 2d 368, 375 (D. Del. 2008). Judge Farnan also deferred deciding the exhaustion issue, and ordered the State to provide additional state court records, an update on Petitioner's mental state, and any additional proceeding in state court that might affect the exhaustion analysis. *Id.* at 376-77. The State submitted the additional materials, and Judge Farnan dismissed the petition without prejudice for failure to exhaust state remedies on September 23, 2008. *See McCray v. Oxley*, Civ. A. No. 07-191-JJF, at D.I. 34.

On September 23, 2008, Petitioner filed in the Delaware Superior Court motions for appointment of counsel and for a publicly funded psychiatric evaluation and competency analysis. The Superior Court denied the motions on October 3, 2008 because Petitioner had not provided reasons for either motion. Petitioner appealed the decision to the Delaware Supreme Court, which remanded the case with instructions that the Superior Court appoint counsel and order a psychiatric evaluation. The Superior Court ordered both on February 24, 2009.

In the meantime, while his appeal of the order denying appointment of counsel and funding for a competency exam was pending, Petitioner filed a Rule 61 motion on October 15, 2008; a motion to amend his motion on October 27, 2008; a motion to set aside his sentence on November 18, 2008; and motion for correction of illegal sentence. On December 4 and 19, 2008, the Superior Court denied these motions based on lack of jurisdiction because of Petitioner's then-pending

appeal from the Superior Court's October 3, 2008 Order. However, after counsel had been appointed and the current and retrospective psychiatric evaluation was completed, the Superior Court ultimately considered the October 15, 2008 Rule 61 motion on its merits. The Superior Court denied the Rule 61 motion on November 22, 2011, and the Delaware Supreme Court affirmed that decision. *See McCray*, 2011 WL 7144243; *McCray v. State*, 2012 WL 1569787 (Del. May 3, 2012).

Thereafter, Petitioner filed a new 2254 Petition asserting the sole claim that counsel provided ineffective assistance by failing to have him evaluated in 2003 to determine if he was competent to enter the plea agreement. The State filed an Answer, asserting that the Petition should be dismissed as time-barred or, alternatively, because the claims asserted therein are procedurally barred or meritless. (D.I. 13)

### III. GOVERNING LEGAL PRINCIPLES

#### A. One Year Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") was signed into law on April 23, 1996. 28 U.S.C. § 2244(d)(1). AEDPA prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners, which begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

4

28 U.S.C. § 2244(d)(1). AEDPA's limitations period is subject to statutory and equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010) (equitable tolling); 28 U.S.C. § 2244(d)(2) (statutory tolling).

Pursuant to the statutory tolling doctrine under § 2244(d)(2), a properly filed state post-conviction motion tolls AEDPA's limitations period during the time the action is pending in the state courts, including any post-conviction appeals, provided that the motion was filed and pending before the expiration of AEDPA's limitations period. *See Swartz v. Meyers*, 204 F.3d 417, 420-24 (3d Cir. 2000); *Price v. Taylor*, 2002 WL 31107363, at *2 (D. Del. Sept. 23, 2002).

In turn, AEDPA's limitations period may be tolled for equitable reasons in appropriate cases. *See Holland*, 130 S.Ct. at 2560. A petitioner can only qualify for equitable tolling by demonstrating "(1) that he has been pursuing his rights diligently, **and** (2) some extraordinary circumstance stood in his way and prevented timely filing;"[2] mere excusable neglect is insufficient. *Schlueter v. Varner*, 384 F.3d 69, 77 (3d Cir. 2004). Consistent with these principles, the Third Circuit has specifically limited the equitable tolling of AEDPA's limitations period to the following circumstances:

> (1) where the defendant (or the court) actively misled the plaintiff;
>
> (2) where the plaintiff was in some extraordinary way prevented from asserting his rights; or
>
> (3) where the plaintiff timely asserted his rights mistakenly in the wrong forum.

*Jones*, 195 F.3d at 159; *see also Thomas v. Snyder*, 2001 WL 1555239, at *3-4 (D. Del. Nov. 28, 2001).

---

[2]*Holland*, 130 S.Ct. at 2562.

## B. Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). This deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied," as "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 98-99 (2011).

Finally, when reviewing a habeas claim under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 285-86 (3d Cir. 2000). The Supreme Court has "not defined the precise relationship between § 2254(d)(2) and § 2254(e)(1)." *Burt v. Titlow*, 134 S.Ct. 10, 15 (2013).

## IV. DISCUSSION

### A. Timeliness

Petitioner's § 2254 Petition, filed in 2013, is subject to the one-year limitations period contained in § 2244(d)(1). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Petitioner does not allege, and the Court cannot discern, any facts triggering the application of § 2244(d)(1)(B), (C), or (D). Given these circumstances, the one-year period of limitations began to run when Petitioner's conviction became final under § 2244(d)(1)(A).

Pursuant to § 2244(d)(1)(A), if a state prisoner does not appeal a state court judgment, the judgment of conviction becomes final, and the one-year period begins to run, upon expiration of the time period allowed for seeking direct review. *See Kapral v. United States*, 166 F.3d 565, 575, 578 (3d Cir. 1999); *Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999). Here, the Delaware Superior Court sentenced Petitioner for his first degree robbery conviction on December 4, 2003, and he did not appeal. Therefore, his judgment of conviction became final on January 5, 2004. Applying the one-year limitations period to that date, Petitioner had until January 5, 2005 to timely file his Petition. *See Wilson v. Beard*, 426 F.3d 653 (3d Cir. 2005) (holding that former Federal Rule of Civil Procedure 6(a) and (e) applies to federal habeas petitions); Fed. R. Civ. P. 6(a)(1) (the day of the event that triggers the period is excluded when computing time periods).

As previously determined by Judge Farnan, Petitioner's Motion to Withdraw Guilty Plea and his Rule 61 Motions did not have any statutory tolling effect because they were filed after AEDPA's limitations period expired on January 5, 2004. However, Judge Farnan held that AEDPA's limitations period was equitably tolled from December 2, 2004, the date on which the United States District Court for the District Court of New Jersey began its inquiry into Petitioner's competency to stand trial for a proceeding pending before it, until such time that Petitioner's competency would be

7

restored. As of December 2, 2004, there were 33 days remaining in the limitations period. Thus, pursuant to Judge Farnan's earlier decision, upon being restored to competency Petitioner had 33 days to file a habeas petition.

The record in this case demonstrates that Petitioner was restored to competency as of July 7, 2011, the date on which Petitioner's counsel wrote to the Delaware Superior Court that Petitioner's Rule 61 motion from 2008 was "now ripe for decision."[3] Adding 33 days to July 7, 2011 leaves August 9, 2011 as the last day on which Petitioner could have timely filed the instant Petition. Petitioner, however, did not file the instant Petition until January 15, 2013, more than 17 months too late.

Even if the Court were to view the limitations period as remaining tolled until after the Delaware Supreme Court issued its May 3, 2012 Order affirming the Superior Court's denial of his 2008 Rule 61 motion, adding 33 days to that date demonstrates that Petitioner needed to file his Petition by June 5, 2012 to be timely, which he did not. Petitioner does not assert, and the Court cannot discern, that any extraordinary circumstance prevented him from filing the instant Petition by June 5, 2012. To the extent Petitioner's untimely filing of the Petition was due to a lack of legal knowledge or the result of a miscalculation regarding the one-year filing period, such factors do not warrant equitably tolling the limitations period. *See Taylor v. Carroll*, 2004 WL 1151552, at *5-6 (D. Del. May 14, 2004). Thus, the Court concludes that the equitable tolling doctrine does not apply in this case.

---

[3]In a psychiatric report dated April 13, 2011, Dr. Robert G. Thompson opined that Petitioner was competent to assist in his Delaware postconviction proceedings. The Superior Court sent a copy of this report to Petitioner's post-conviction counsel and to the State, along with a letter asking the parties to advise whether further psychiatric evaluation was necessary or whether the Superior Court could proceed with the 2008 Rule 61 motion. Petitioner's counsel responded with a letter stating that the matter was "now ripe for decision."

8

In short, Petitioner's filing on January 15, 2013 is more than seven months too late. Accordingly, the Court will dismiss the Petition as untimely.[4]

### B. Merits

Even if the Petition were timely, the Court would deny as meritless Petitioner's sole claim: that the attorney who represented him during his 2003 criminal proceeding provided ineffective assistance by failing to have a formal psychiatric evaluation performed to determine if Petitioner was competent to enter a guilty plea. The Court's evaluation of this claim requires consideration of the clearly-established federal law governing the issue of a defendant's competency as well as the clearly-established federal law governing the issue of a counsel's effective assistance.

To begin, the Due Process Clause prohibits the prosecution of a criminal defendant who is not competent to stand trial. *See Drope v. Missouri*, 420 U.S. 12, 171 (1975). A defendant is incompetent if he lacks "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" or "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960)). "Competence to stand trial is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial, including the right of effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so." *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996). However, the Supreme Court has not "prescribe[d] a general standard with respect to the nature or quantum of evidence necessary to require resort to an

---

[4]Having determined that the Petition is time-barred, the Court need not address the State's other reason for dismissal. Nevertheless, the Court alternatively concludes that the Delaware Supreme Court reasonably applied *Strickland* in holding that Petitioner's defense counsel did not provide ineffective assistance by failing to have Petitioner evaluated to determine his competency to enter a guilty plea.

9

adequate procedure" for determining competency. *Drope*, 420 U.S. at 172. Instead, it has explained that:

> evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but that even one of these factors standing alone may, in some circumstances, be sufficient. There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated. That they are difficult to evaluate is suggested by the varying opinions trained psychiatrists can entertain on the same facts.

*Drope*, 420 U.S. at 180.

In turn, the Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

10

In this case, although the Delaware Supreme Court did not review Petitioner's instant contention within the framework established by *Strickland*, the Court concludes that its decision to affirm the Superior Court's denial of the instant contention as raised Petitioner's third Rule 61 motion does not warrant habeas relief. Notably, after reviewing the evidence in the case along with the April 13, 2011 Forensic Mental Health Examination Report issued by Dr. Robert G. Thompson of the Delaware Psychiatric Center, the Delaware Supreme Court specifically found that Petitioner was competent when he entered his guilty plea in 2003. The Delaware Supreme Court's determination of competency is a factual finding which the Court must accept as correct unless rebutted by clear and convincing evidence. *See Nara v. Frank*, 488 F.3d 187, 201 (3d Cir. 2007); *Thompson v. Keohane*, 516 U.S. 99, 111 (1995). Petitioner contends that the Court should disregard Dr. Thompson's 2011 conclusion that Petitioner was competent during his 2003 plea proceeding and, instead, rely on the "Federal Bureau of Prison's mental health evaluations that were conducted [in January 2005 and July 2006] after [he] was transferred to their custody for prosecution on offenses [in the State of New Jersey] similar to those that were pleaded to in the State of Delaware," and rely on the Forensic Mental Health Examination Report issued by Dr. Charlotte Selig of the Delaware Psychiatric Center in April 2009, because a "more accurate look into [his] mental competency would have come from the early evaluations [performed in January 2005 and July 2006] rather than the [evaluation performed in 2011]." (D.I. 4 at 8- 9)

Having carefully reviewed the state court record, the Court concludes that Petitioner has failed to overcome the presumption of correctness the Court must afford to the Delaware Supreme Court's finding of competency. Notably, Dr. Thompson considered the two competency evaluations that the Federal Bureau of Prisons performed in 2005 and 2006 when finding that there was "no compelling evidence to suggest that [Petitioner] was incompetent when he entered guilty

11

plea in 2003." (D.I. 15, Ans. to Appellant's Op. Br. in *McCray v. State*, No. 677, 2011, Exh. C at 8) Specifically, Dr. Thompson explained,

> [r]ecords indicate that, in 2005 and 2006, [Petitioner] underwent competency evaluations while facing charges in Federal Court. Clinicians opined that he was mentally ill at the time. His attorney during those proceedings indicated that the Court considered him incompetent to stand trial and un-restorable. However, it is not clear whether those findings have relevance to events that happened in 2003, which occurred two to three years earlier. To my knowledge, no medical records from the year 2003 exist, so it is not possible to know whether active mental illness might have affected [Petitioner's] competency at the time.

*Id.* at 7.

Moreover, the judges who authored the 2011 Superior Court decision denying Petitioner's third Rule 61 motion (and, therefore, also denied Petitioner's assertion that he had been incompetent when he pled guilty in 2003) were the same judges who presided over Petitioner's guilty plea colloquy (Judge Peggy L. Ableman) and the judge who presided over Petitioner's sentencing (Judge Fred S. Silverman). (D.I. 15, Ans. to Appellant's Op. Br. in *McCray v. State*, No. 677, 2011, Exh. A. at 8; D.I. 19 at 23, 28) The two judges explained, in relevant part,

> [w]hen [Petitioner] pleaded guilty in 2003, the court conducted a colloquy including direct questioning. The court concluded the plea was knowing, voluntary, and intelligent.
>
> In his pre-sentence interview, [Petitioner] was lucid and responsive. He blamed his crimes on drugs. He made no mention of mental health treatment, much less a prior admission to a mental health facility. [Petitioner] gave no one – the police, his lawyer, the pre-sentence officer, the judge who took his plea, nor the judge who sentenced him – reason to suspect that he had mental health issues, much less that he was incompetent at the time of the offenses or when he pleaded guilty.
>
> In fact, at the sentencing hearing, there was further colloquy. Because the 1985 robbery was a sentencing aggravator, the court offered to let [Petitioner] withdraw his guilty plea. After the further colloquy, the court, again, found the plea knowing, voluntary, and intentional. Thus, it can be said [Petitioner's] guilty pleas were accepted by two judges,

> on two occasions. (Because of this unique procedural wrinkle, the judge who first accepted the plea the judge who reconsidered the plea have both reviewed the record and agree on the outcome here).

*McCray*, 2011 WL 7144243, at *1. These two Superior Court judges "witnessed" first hand Petitioner's demeanor in 2003 and found that he knowingly, intelligently, and willingly entered his guilty plea.

The Court has also reviewed the transcripts of the plea and sentencing colloquies, and they reveal that Petitioner understood the charges against him, he was able to consult with his attorney, and he did not engage in any inappropriate behavior. In turn, Petitioner's defense counsel, who knew about Petitioner's time as a patient in a mental hospital sometime around 1988, stated that he did not see any evidence of mental illness, and determined that Petitioner understood the process, was able to assist in his defense, and asked cogent questions. (D.I. 19 at 23) Finally, as noted by Dr. Thompson, the fact that Petitioner was deemed mentally ill and incompetent to stand trial in 2005 in no way affected or reflected Petitioner's competency to stand trial in 2003. Thus, based on the foregoing, the Court accepts as correct the Delaware Supreme Court's factual determination that Petitioner was competent to enter his guilty pleas in 2003.

Having determined that Petitioner was competent to enter his guilty pleas in 2003, Petitioner cannot demonstrate any reasonable probability that his guilty plea would not have been accepted but for defense counsel's failure to have his competency evaluated in 2003. Accordingly, the Court will alternatively deny the Petition as meritless.

## V. **PENDING MOTION**

During the pendency of this proceeding, Petitioner filed a Motion To Appoint Counsel. (D.I. 22) The Court has concluded that the Petition must dismissed as time-barred or meritless. Therefore, the Court will deny this Motion as moot.

13

## VI. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). A federal court denying a habeas petition on procedural grounds without reaching the underlying constitutional claims is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that Petitioner's habeas Petition does not warrant relief because it is time-barred or, alternatively, meritless. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court declines to issue a certificate of appealability.

## VII. CONCLUSION

For the reasons discussed, Petitioner's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 is **DENIED**. An appropriate Order will be entered.